# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of ) <br> The person of Charles Christopher MARTINEZ, ) <br> A DNA sample via buccal swabs from Charles ) <br> Christopher Martinez. ) | Case No. 26-sw-00128-CYC |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the <u>State</u> District of <u>Colorado</u>, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §2113(a), | Bank Robbery |

The application is based on these facts:

☒ Continued on the attached affidavit, which is incorporated by reference.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

<u>*s/Christopher Pyler*</u>
*Applicant's signature*

<u>TFO Christopher Pyler, FBI</u>
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by <u>telephone</u>.

Date: <u>January 28, 2026</u>

<u>_____</u>
*Judge's signature*

Cyrus Y. Chung

City and state: <u>Denver, CO</u>   <u>United States Magistrate Judge</u>
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

The subject is Charles Christopher Martinez, who is currently in the custody of the Denver Sheriff's Office, but will be transferred to the custody of the United States Marshal's Service.

**ATTACHMENT B**

**<u>DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED</u>**

1. A DNA sample via buccal swabs from Charles Christopher Martinez.

## AFFIDAVIT

I, Christopher Pyler, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

### INTRODUCTION AND AGENT BACKROUND

1. Your affiant, Detective Christopher Pyler, hereby informs the Court that he is a commissioned peace officer with the Westminster, Colorado Police Department, and has been assigned as a federal task force officer with the FBI Denver Rocky Mountain Safe Streets Task Force ("RMSSTF") since January 2015. Your affiant is responsible for investigating violent crimes in the Denver metropolitan area, including bank and business robberies, kidnappings, carjackings, and weapons violations. Your affiant has been a police officer in Colorado for more than thirty-two years and has training and experience in the investigation of property crimes, financial crimes, and violent crimes. The information contained in this affidavit is based upon information compiled from personal involvement, witness/victim interviews, fellow law enforcement officers, informants and by reading official police reports.

2. This affidavit is submitted in support of an application for a search warrant for the person described in Attachment A (hereinafter "Subject,"), there being probable cause to believe that located on the person described in Attachment A are items described in Attachment B, those items being evidence, fruits, and instrumentalities of violations of Title 18, United States Code, § 2113(a), Bank Robbery.

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, your affiant has not included each and every fact known to me concerning this investigation. Your affiant set forth facts your affiant believes are necessary to establish probable cause to believe

1

that evidence, fruits, and instrumentalities of a violations of 18 U.S.C. § 2113(a) Bank Robbery, are presently located on the Subject.

## INVESTIGATION

1.    On January 5, 2026, at about 0945, your affiant responded to the U.S. Bank at 730 North Colorado Boulevard, Denver, Denver County, Colorado, on a reported bank robbery. Your affiant is aware that the US Bank has deposits insured by the Federal Deposit Insurance Corporation.

2.    The victims and witnesses reported a male robber, described as a white male, 5'9" tall with a "skinny build" and wearing a black beanie and puffy orange jacket had robbed the bank and gone into a nearby restaurant. Officers checked the restaurant and the area and did not locate the robber but did locate a puffy orange jacket with the words "Tech Ops" on the back of it in a dumpster enclosure located east of the bank in the bank parking lot. There was $1,850 in U.S. currency in the pocket of the jacket. The victims and witnesses reported the robber had a hand in a coat pocket as if he had a weapon, but none of the victims or witnesses saw a weapon.

3.    Three tellers at the teller line were all robbed. The initial victim, J.S., reported she had been helping a customer in a nearby office and had walked to the teller line to get some cash for the customer's withdrawal.

4.    The robber was standing in line with other customers, and she walked across the lobby from the office holding some $1 and $5 bills. She explained when she went behind the teller line, she saw the robber walk past the other customers in front of him in the line and approach the teller lines. He walked to her station and told her "Give me all the money." J.S. said she paused, and the robber told her, "Just give me all the money" and made a gesture with his right hand, which was concealed in his pocket. J.S. complied and gave the robber $628 in $1, $5, and $20 bills,

2

currency which was under the care and control of U.S. Bank, an FDIC insured banking institution. Once she complied, the robber confronted the other two tellers and obtained U.S. currency from them as well, and then fled the bank on foot, going to the east. J.S. said when the robber gestured with his hand in his pocket, she thought he had something in his pocket but did not see it. She felt the robber was trying to scare them and admitted she had been scared. She described the robber as a "mixed" race male with dark facial hair, 5'8" to 5'9" tall, with a gray beanie and orange jacket. She said he appeared to be in his 40's and had a "thin" slender build.

     5.     I.L. was another bank teller working on the teller line. She had been helping another customer, B.B., with a withdrawal when the robber came to the counter and confronted J.S. B.B. had been making a $2,500 withdrawal and I.L. had taken the money from her drawer when the robber approached the counter. She said the robber said something like "hand me the money, hand me the money" and she saw another teller hand him U.S. currency, so she handed him $1,700 in U.S. currency, which was also under the care and control of U.S. Bank. She said the robber was a white male, about 6' tall, 50-55 years of age, wearing an orange construction style jacket with a dark gray or black hoodie underneath, a dark gray stocking cap, and gray pants. I.L. also noticed the robber had his right hand in his jacket pocket as if he may have had a weapon but said he did not verbalize that he had a weapon or display one. She admitted she was scared during the robbery and was still visibly shaking when she was interviewed.

     6.     The customer I.L. was assisting was B.B. He was making a withdrawal when the robber approached the counter. B.B. was standing on the customer side of the counter next to the robber when he approached. He heard the robber say "give me the money" and realized the bank was being robbed. Once the robber confronted the first teller, he moved towards I.L.'s station and told B.B. "to get back" and B.B. told the robber "I'm trying to." The robber took the U.S. currency

I.L. was going to give to B.B. as his withdrawal. He described the robber as having his right hand inside his jacket as if he had a weapon, but B.B. did not see one. After the robber had taken money from the tellers, he fled the bank. B.B. described the robber as a white or Hispanic male, 5'11" tall in his mid-50's with a goatee, wearing a black beanie and orange jacket.

7. The last teller robbed was D.A. She said she saw the robber in line with other customers and was the last person in line. D.A. said the robber approached the counter and told them "Give me the money so I can leave."

8. D.A. said J.S. complied, so she complied as well and gave him $650 in U.S currency that was under the care and control of U.S. Bank.

9. The robber took the money with his left hand and said he had his right hand in his pocket as if he had a weapon, but he did not say he had a weapon, nor did he display one. D.A. said she didn't think he was going to hurt anyone because he said he wanted to leave them alone but admitted she was scared while being robbed. She described the robber as a white male, about 5'8" to 5'9" tall, black beanie, bright orange jacket, and gray or lighter blue pants. She described him as having a "scruffy" beard and a medium build (about 200 pounds).

10. Investigators obtained surveillance video footage of the robbery from U.S. Bank which confirmed much of the victim and witness statements about the robbery. As he took the U.S. currency from D.A., he removed his right hand from his jacket pocket to take the currency, and no weapon was visible.

11. The video surveillance footage showed the robber was wearing an orange and black jacket (with reflective stripes) with "Tech Ops" printed on the back of it, a gray beanie with a "Carhartt" logo on the front of it, gray sweatpants, and black and white shoes. He was not wearing gloves or a mask. As he fled the bank, the robber walked directly past the camera mounted

4

in an automated teller machine which captured his face. The jacket located in the dumpster enclosure appeared to be the same jacket worn by the robber including the words "Tech Ops" printed on the back and the same reflective tape (photos below). There was $1,715 in U.S. currency in one of the coat pockets.

 

12.   Images of the robber from the bank surveillance video footage were released publicly through Crime Stoppers and on January 6, 2025, a tip was received that identified Charles Christopher MARTINEZ, as the robber. Your affiant and other investigators reviewed images of MARTINEZ from local law enforcement and commercial databases and saw that MARTINEZ closely resembled the bank robber, including a distinct mark on the right side of his face (see images above and below).



13. Further investigation located a Facebook social media profile for MARTINEZ, which showed a short video dated December 25, 2025. The facial hair in the video appeared to be consistent with the appearance, including facial hair, of the robber (see above and below).



14. Your affiant was contacted by the person who provided the original tip regarding MARTINEZ's identification as the bank robber. The "tipster" advised they were an acquaintance of MARTINEZ's and had last seen him several years ago but had a lot of contact with him at that time and was "100% certain" MARTINEZ was the robber. The tipster said the tipster knew MARTINEZ had been convicted in the past for bank robbery and told your affiant they knew he had written a book about his prior bank robberies.

15.     Your affiant has confirmed that Charles MARTINEZ authored and published a book discussing his prior federal convictions for bank robbery and prison sentence. Your affiant also confirmed that MARTINEZ has been convicted in federal court of bank robbery on two separate prior occasions.

16.     Your affiant received cellular call detail records for the phone number associated to MARTINEZ. During the time of the robbery, the phone was not on the network, and no records or location data was available. Location data showed the cellular phone in the area of MARTINEZ's known residence at 1125 North Forest Street in Denver, Colorado in Denver at about 1615 on the day of the robbery.

17.     Your affiant applied for and was granted a state arrest warrant for MARTINEZ's arrest for robbery. On January 28, 2026, MARTINEZ was located and arrested on the state warrant. Your affiant contacted MARTINEZ after his arrest, and your affiant could see he closely resembled the bank robber.

18.     Your affiant applied for and was granted a state search warrant for the residence at 1125 North Forest Street in Denver, Colorado. During the search, items of clothing including a pair of distinctive striped tennis shoes and a pair of gray sweatpants, both of which matched clothing worn by the bank robber, were found and collected as evidence.

19.     On January 21, 2026, a federal grand jury indicted the defendant for one count of Bank Robbery in violation of 18 USC § 2113(a).

20.     Your affiant is aware that DNA cells from a suspect's saliva, blood or skin cells are commonly left on clothing worn by a suspect. A swab of clothing can be examined by a crime lab. That examination typically leads to a DNA profile containing the DNA of the person recently wearing said clothing.

21. The Tech Ops jacket left in the nearby dumpster with a large amount of cash in the pocket appears to be the exact same as worn by the bank robber on the date of offense.

22. A DNA sample collected from MARTINEZ is necessary to continue the investigation.

23. A buccal swab of MARTINEZ will be analyzed to develop a known single source DNA profile. That known single source DNA profile will be compared to evidence collected in this case, including a DNA profile taken from swabs of the Tech Ops jacket worn by the bank robber. The known DNA profile and DNA profile from the swan of the Tech Ops jacket will be compared to confirm any involvement MARTINEZ has with the commission of the violation with which he has been charged.

24. Based on the investigation described above, probable cause exists to believe that on the person described in Attachment A, will be found evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2113(a), Bank Robbery.

25. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

\\


\\



\\

8

26.    Your affiant declares under penalty of perjury that the foregoing is true and correct to the best of his information, knowledge, and belief.

*s/Christopher Pyler*
Detective Chris Pyler, Task Force Officer, RMSSTF

SUBSCRIBED and SWORN before me this __28th__ day of __January__, 2026

HON. CYRUS Y. CHUNG
UNITED STATES MAGISTRATE JUDGE

**Application for search warrant reviewed and submitted by Brian Dunn, Assistant United States Attorney.**

9